# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAUREN EMMELL, | : |
| Plaintiff, | : |
| | : CIVIL ACTION |
| v. | : |
| | : NO. 16-3787 |
| PHOENIXVILLE HOSPITAL COMPANY, LLC, | : |
| Defendant. | : |

## M E M O R A N D U M

**STENGEL, J.**                                                                                                           August 6, 2018

On March 29, 2018, I granted in part and denied in part the defendant's motion for summary judgment in this employment discrimination case. Specifically, I granted summary judgment with respect to the plaintiff's Family and Medical Leave Act claims and denied summary judgment with respect to the plaintiff's Americans with Disabilities Act (ADA) and Pennsylvania Human Relations Act (PHRA) claims, except for those barred by the laws' respective statutes of limitations. (Doc. No. 41.) Defendant Phoenixville Hospital has now filed a motion to reconsider my decision regarding the ADA and PHRA claims, and Plaintiff Lauren Emmell has responded. (Doc. Nos. 44, 45.) For the reasons set forth below, I will grant in part and deny in part the defendant's motion for reconsideration.

## I. BACKGROUND AND PROCEDURAL HISTORY

The factual background and procedural history of this case are incorporated by reference from my summary judgment memorandum, where they are set forth in full. (Doc. No. 41.)

## II. LEGAL STANDARD

A court deciding a motion for reconsideration may alter or amend a judgment "if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion ...; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing N. River Ins. Co. v. CIGNA Reins. Co., 52 F.3d 1194, 1218 (3d Cir. 1995)); see also Cont'l Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995) (because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly).

## III. DISCUSSION

The defendant takes issue with many aspects of my summary judgment ruling that did not come down in its favor. Only one warrants reconsideration, and it does not change my ultimate conclusion. As discussed below, I find that the issue of "pretext" warrants reconsideration as it relates to the plaintiff's ADA retaliation claim. I had not included that step of the retaliation analysis in my summary judgment decision, and while the defendant is correct that law requires a "pretext" analysis, this additional analysis does not alter my summary judgment conclusion.

In the analysis that follows, for the sake of completion and in order to clarify anything that may have been misunderstood, I will address all of the defendant's arguments for reconsideration in the order the parties briefed them. The final discussion, of "pretext," is meant to supplement my March 29, 2018 summary judgment decision.

## A. Plaintiff's ADA and PHRA discrimination claims survive summary judgment.[1]

### 1. Events that are time-barred as claims may serve as background evidence and/or evidence of a request for accommodation.

#### a. The statutes of limitations apply to the "unlawful employment practice," not the request for accommodation.

In making the argument for reconsideration block-quoted below, the defendant misconstrues certain minor but important distinctions within my summary judgment analysis:

> [T]he Court denied summary judgment as to Plaintiff's ADA/PHRA failure-to-accommodate claim because it found that Plaintiff told Ms. Tannouri that her work performance would improve if it were not for alleged stress caused by the terms of the 2012 PIP [performance improvement plan], and Ms. Tannouri apparently refused to rescind the 2012 PIP. (Op. at 15-18; 25-26). However, the Opinion did not address the *only* evidence in the record: that this alleged conversation between Plaintiff and Ms. Tannouri occurred in August 2012, when the 2012 PIP was presented to her. (*See* Pl's 3/23/17 Dep. 200:19-208:24 (Ex. A)).

(Doc. No. 44, at 7 (footnotes omitted).)

---

[1] This is subject to the ADA and PHRA statutes of limitations, as discussed in my summary judgment decision. (Doc. No. 41, at 15–18.) "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 102 (2002).

Regarding timeliness, as noted in my summary judgment decision, it is the employer's alleged *denial* of a plaintiff's request for accommodation, not the plaintiff's *request* that starts the clock on the statute of limitations. (Doc. No. 41, at 25 (citing Mercer v. Se. Pa. Transit Auth., 26 F. Supp. 3d 432, at 442 (E.D. Pa. 2014)).) This is because the employer's *denial* is the "unlawful employment practice" under the ADA. Id. As my summary judgment decision explains, Ms. Emmell's discrimination claims are limited to those that allege "unlawful employment practices" after March 8, 2013 under the ADA and after July 6, 2013 under the PHRA.[2] (Doc. No. 41, at 25.) Additionally, time barred events/actions, like the August 2012 meeting between Ms. Emmell and Ms. Tannouri, may be used as "background evidence" to support a timely claim, even though such events/actions cannot serve as the basis of a claim. (Doc. No. 41, at 16 (citing Nat'l R.R. Passenger Corp. v. Morgan, 563 U.S. 101, 112 (2002)).)

In the hospital's motion for summary judgment, it took issue with the plaintiff's failure to accommodate and failure to engage in the interactive process claims in its argument that the plaintiff had never requested an accommodation. (Doc. No. 28, at 9–10.) In making this argument, the hospital did not address whether or when the hospital *denied* that request or failed to engage—nor did the plaintiff specify. With that, in my summary judgment ruling, I addressed the issue the defendant presented—whether the plaintiff made a request for accommodation. In doing so, I found that there is a genuine

---

[2] It is not entirely clear from the parties' briefings which facts, on which dates, form the basis for the plaintiff's failure to accommodate claim or the plaintiff's claim that the hospital failed to engage in the interactive process—or the extent to which those claims are actually one in the same. At trial, pursuant to my summary judgment ruling, the plaintiff *may not* argue that her failure to accommodate claim is based on an alleged *denial* of accommodation predating March 8, 2013 (ADA) or July 6, 2013 (PHRA). However, the timing of the plaintiff's *request* for accommodation does not present a statute of limitations issue.

issue of material fact as to whether Ms. Emmell's conversations with Ms. Tannouri and her request for transfer to a different position would constitute a *request* for accommodation under the ADA. (Doc. No. 41, at 26.) I did not address whether the hospital denied Ms. Emmell's request or the timeliness of that denial because the defendant did not address those issues on summary judgment.[3]

### b. It is not at issue whether employers are required to excuse employees' past performance deficiencies.

The defendant argues that Ms. Emmell's August 2012 conversation with her supervisor, Ms. Tannouri, regarding her 2012 PIP "cannot support" Ms. Emmell's failure to accommodate claim because "employers are not required to excuse their employees' prior performance deficiencies as a reasonable accommodation." (Doc. No. 44, at 6.) The plaintiff responds that her argument "was never that Defendant was obligated to excuse prior misconduct or to even rescind the PIP." (Doc. No. 45-1, at 5.) Instead, the plaintiff's argument is that the defendant failed to engage in the interactive process as required by the ADA. (Id.) Therefore, this argument by the defendant is a nonstarter, especially as part of a motion for reconsideration.

---

[3] Additionally, I will note and clarify a tangential argument by the defendant. The defendant states in a footnote that I "found that the only viable adverse employment action to support Plaintiff's ADA/PHRA discrimination and retaliation claims was her termination" and that I "apparently agreed with" certain enumerated arguments by the defendant. (Doc. No. 44, at 11 n.8 (citing Doc. No 41, at 31–32).) I made no such finding.

## 2. The plaintiff's request for a transfer could constitute a request for a reasonable accommodation.

### a. The defendant, in arguing that the position was not vacant, attempts to improperly present an issue for reconsideration that it did not present on summary judgment.

The defendant next argues that I improperly concluded "that Plaintiff's request to transfer out of the SPU constituted a request for accommodation." (Doc. No. 44, at 7–8.) First, to frame this properly against the summary judgment standard, I found that there is a genuine issue of material fact as to whether the plaintiff made a request for accommodation—it is the jury's job to make the definitive decision.

A request for accommodation triggers the parties' duties to participate in the interactive process. Taylor, 184 F.3d 296, 315 (3d Cir. 1999). A plaintiff's request for transfer, even when she does not know of open positions, could constitute a request for accommodation, sufficient to trigger an employer's duty to participate in the interactive process. Id. at 315–16. This is because the employer is often in a better position to know whether transfer is feasible and whether there are alternative accommodations it can make. Id. ("Once the employer knows of the disability and the employee's desire for accommodations, it makes sense to place the burden on the employer to request additional information that the employer believes it needs.").

Ultimately, however, where the plaintiff alleges failure to transfer as the basis for liability, the plaintiff has the "burden of showing that he or she can perform the essential

6

functions of the open position." Id. "When an employee has evidence that the employer did not act in good faith in the interactive process . . . [courts] will not readily decide on summary judgment that accommodation was not possible and the employer's bad faith could have no effect." Id. at 318.

The defendant argues in its motion for reconsideration that the "Clinical Document Specialist" position was "cancelled and *never filled*" and that the plaintiff has failed to meet her burden of demonstrating a failure to transfer claim.[4] (Doc. No. 44, at 8.) However, the defendant neither argued nor pointed to any evidence on this issue in its motion for summary judgment. (See Doc. No. 28.) Therefore, in my summary judgment decision, I addressed the issue as presented—whether the plaintiff had demonstrated that she requested an accommodation, sufficiently to overcome summary judgment—and I found that she had. (See Doc. No. 41, at 22–26.) Now the defendant is attempting to advance a separate argument, about the sufficiency of evidence to support a possible failure to transfer claim, as a motion for reconsideration. This defies the purpose of a motion for reconsideration, and I see no reason to reconsider my denial of summary judgment as to the issue that was before me: whether the plaintiff requested a reasonable accommodation.

---

[4] The plaintiff states: "[T]he position clearly existed as [sic] the time Emmell made the request for a transfer. On May 17, 2013, Emmell applied for a transfer from SPU to the position of Clinical Document Specialist. However, the position was not cancelled until June 3, 2013. (See. Ex. O to Pl's Resp. to SUMF)." Given the dispute between the parties and the lack of clarity from the record, there is a genuine issue of material fact that a jury should properly decide regarding whether the defendant failed to transfer the plaintiff.

7

### b. Request for transfer could constitute a request for accommodation, notwithstanding the hospital's policy.

The defendant argues that I improperly failed to address its argument that, even if the position were available, Ms. Emmell was ineligible for transfer due to the hospital's policy against transferring employees who were on PIPs. (Doc. No. 44, at 10.) First, this argument does not even appear in the defendant's motion for summary judgment; it appears buried within the defendant's reply to the plaintiff's response. (Doc. No. 35, at 13–14.) More importantly, in analyzing the defendant's motion for summary judgment, this argument simply did not impact my finding that there is a genuine issue of material fact as to whether the plaintiff made a request for accommodation, which is why I did not address it in depth.[5]

## B. Plaintiff's ADA and PHRA discrimination and retaliation claims overcome summary judgment.

### 1. Evidence of causation is sufficient to overcome summary judgment.

#### a. The court did not fail to address plaintiff's deposition testimony, which the defendant repeatedly mischaracterizes.

The defendant argues that I improperly neglected its argument that the plaintiff's "'lack of memory' cannot save her claims as a matter of law" and that I "failed to address (*i.e.,* appear[] to have overlooked) the overwhelming record evidence that Plaintiff admitted to falsifying patient records on July 2, 2013 (*i.e.*, the conduct for which she was

---

[5] However, I did mention the policy once in passing: "[Ms. Emmell] also requested a transfer to a different unit, notwithstanding the hospital's policy against transferring employees on PIPs. (Doc. No. 33 ¶ 92; Doc. No 33a ¶ 45.)" (Doc. No. 41, at 29.)

terminated)." (Doc. No. 44, at 12.) To support the latter argument, the defendant cited eleven excerpts from the plaintiff's depositions. (Id.) After revisiting all of them, I still do not see a single instance where the plaintiff admits to "falsifying patient records." Ms. Emmell admits that on July 2, 2013 she did not record patients' vitals in their charts immediately after checking them, but she does not state that she falsified any information. Further, Ms. Emmell's inability to recall the specifics of an event that occurred years ago neither saves her claim nor dooms it to failure.

I agree with Ms. Emmell that the defendant's interpretations of her deposition testimony are "selective and myopic." (Doc. No. 45-1, at 11.) The deposition testimony that the defendant feels I should have relied upon as destroying any causal connection did not, and still does not, materially impact my decision that there is a genuine issue of material fact as to causation, as discussed in my summary judgment decision. (See Doc. No. 41, at 31–32.)

      **b.    Ms. Emmell's supervisors' awareness of her Lyme disease was <u>not</u> the sole factor supporting causation.**

The defendant argues that I relied solely on Ms. Emmell's supervisors' awareness of her Lyme disease in my causation analysis. As the plaintiff responds, I simply did not. The relevant portion of my opinion reads: "Because of the close timing between this meeting with Ms. Strezelecki and the plaintiff's firing, along with the plaintiff's ongoing problems and conversations with Ms. Tannouri, it is proper for a jury to determine whether Ms. Emmell has established causation for purposes of her discrimination and retaliation claims under the ADA and PHRA." (Doc. No. 41, at 32.) Put differently, Ms.

9

Emmell and Ms. Tannouri extensively discussed Ms. Emmell's work performance and her Lyme disease—and the connection between the two; Ms. Emmell felt Ms. Tannouri treated her poorly and was insensitive to her condition; and the timing between Ms. Emmell's meeting with Ms. Strezelecki and her firing—less than a month—was somewhat close (but not close enough to be decisive, as I explain below). All of this, taken together, creates a genuine issue of material fact as to causation. (Id. at 31–32.)

### c. I did not find temporal proximity, without more, sufficient to support Ms. Emmell's retaliation claim.

Similar to the point immediately above, the defendant argues that "the Court appears to have relied exclusively on the 'close timing' (*i.e.,* 16 days) between Plaintiff's 'meeting with Ms. [Strzelecki] and [her] firing,'" to deny summary judgment on the plaintiff's retaliation claim.[6] (Doc. No. 44, at 13.) The defendant again cites page thirty-two of my decision, which discusses causation. As the plaintiff noted in her response, the same language from my opinion, quoted above, applies here, and it plainly shows that I did not find temporal proximity sufficient to establish causation. Once again, my summary judgment decision reads: "Because of the close timing between this meeting with Ms. Strezelecki and the plaintiff's firing, along with the plaintiff's ongoing problems and conversations with Ms. Tannouri, it is proper for a jury to determine whether Ms. Emmell has established causation for purposes of her discrimination and retaliation claims under the ADA and PHRA." (Doc. No. 41, at 32.) I appropriately considered

---

[6] The defendant argues that I "exclusively" relied on *both* Ms. Tannouri's awareness of Ms. Emmell's Lyme disease and temporal proximity in my causation analysis, without explaining how I could have "exclusively" relied on two things. The defendant seems to undermine its own argument.

temporal proximity alongside other relevant factors in making my causation determination. Given the above discussion, the defendant has not presented grounds to reconsider my decision on causation.

### 2. "Pretext" pertains to retaliation, not failure to accommodate.

The defendant argues that reconsideration is warranted because I did not address its argument regarding pretext. The defendant had argued in its motion for summary judgment that even if the plaintiff established a prima facie case of either failure to accommodate or retaliation, the claims must fail because "she cannot establish that the Hospital's stated reasons for its actions are pretextual on any level." (Doc. No. 28, at 22.)

As set forth below, I find that the defendant is incorrect that I should have addressed pretext in my failure to accommodate analysis but correct that I should have addressed pretext in my retaliation analysis. Therefore, I will address pretext fully below, as an addendum to my summary judgment decision on retaliation. However, this additional analysis does not change my ultimate conclusion denying the defendant's motion for summary judgment on the plaintiff's ADA and PHRA discrimination and retaliation claims.

### a. "Pretext" is not relevant to an ADA/PHRA failure to accommodate claim.

Regarding the defendant's motion for summary judgment on the plaintiff's failure to accommodate claim, pretext is not a relevant consideration. "[F]ailure to accommodate claims 'do not require that an employer's action be motivated by a discriminatory animus directed at the disability and, therefore, the McDonnell-Douglas test does not apply.'"

11

Reyer v. Saint Francis Country House, 243 F.Supp.3d 573, at 595 (E.D. Pa. 2017) (citing Sharbaugh v. West Haven Manor, No. 14-1723, 2016 WL 6834613, at *7 (W.D. Pa. 2016)). Because the McDonnell-Douglas test does not apply, pretext is not an applicable consideration for a court deciding a motion for summary judgment on a failure to accommodate claim.[7] Brown v. Lankenau Hosp., No. 95-7829, 1997 WL 277354, at *8 n.9 (E.D. Pa. 1997). Given that pretext is not an applicable consideration, there is no basis for reconsideration of my decision denying summary judgment on Ms. Emmell's failure to accomodate claim. (See Doc. No. 41, at 23 –26 (reasonable accommodation analysis).)

### b. "Pretext" should be addressed in an ADA/PHRA retaliation analysis.

The McDonnell-Douglas burden-shifting framework does apply, however, to Ms. Emmell's retaliation claim. Reyer, 243 F.Supp.3d at 594 n.16, 595 (stating that the "burden shifting scheme applies" to ADA claims of retaliation and disparate treatment but not to failure to accommodate); see also Isley v. Aker Phila. Shipyard, Inc., 275 F. Supp. 3d 620, 631 (E.D. Pa. 2017) (applying the McDonnell-Douglas burden-shifting framework to the plaintiff's ADA retaliation claim).

In my summary judgment decision, I found that the plaintiff had set forth a prima facie case of retaliation. (Doc. No. 41, at 27–32.) I found that there were issues of

---

[7] "Given the typical absence of direct proof and denials by the employer, disparate impact cases are analyzed under the familiar *McDonnell-Douglas* burden-shifting framework. Reasonable accommodation claims, however, do not involve comparisons with other employees and typically contain allegations which, if true, would directly establish a violation of the ADA. In the garden-variety reasonable accommodation claim, therefore, there is no need to utilize an inferential proof scheme." Brown, 1997 WL 277354, at *8 n.9.

material fact as to whether Ms. Emmell engaged in a protected employee activity and whether a causal connection existed between the protected activity and the adverse employment action (the parties do not dispute that firing is an adverse employment action). I denied the defendant's motion for summary judgment as to retaliation. (Id. at 32.)

In that analysis, however, I did not explicitly address the defendant's proffered legitimate nondiscriminatory reason for firing the plaintiff or the plaintiff's argument that the reason was pretextual.[8] Pursuant to the McDonnell-Douglas burden-shifting framework, I should have done so, even though the further analysis overlaps significantly with the discussion of causation in my summary judgment decision, as the plaintiff points out in its response. (See Doc. No. 45-1, at 15 (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 286 (3d Cir. 2000)).) The McDonnell-Douglas framework requires me to address pretext separately from causation, as part of the analysis of retaliation, and I will do so below.

### c. "Pretext" addendum to my summary judgment decision on ADA/PHRA retaliation does not change my conclusion denying summary judgment.

Once a plaintiff sets forth evidence sufficient to establish a prima facie retaliation claim under the ADA, the burden shifts to the defendant employer to offer a "legitimate non-retaliatory reason for its adverse employment action." Krouse v. American Sterilizer

---

[8] The defendant incorrectly states that the plaintiff failed to address pretext in its response to the defendant's motion for summary judgment. (See Doc. No. 44, at 14.) The plaintiff addresses pretext at length in its response to the defendant's motion for summary judgment. (Doc. No. 34, at 16–20.)

Co., 126 F.3d 494, 500 (3d Cir. 1997). The employer's burden is "relatively light" Id. If the employer puts forth such a reason, the burden then shifts to the plaintiff, who must convince the factfinder "both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." Id. at 501. "To obtain summary judgment, the employer must show that the trier of fact could not conclude, as a matter of law, (1) that retaliatory animus played a role in the employer's decisionmaking process and (2) that it had a determinative effect on the outcome of that process." Id. A defendant can accomplish this by showing that there is no genuine issue of material fact as to whether the defendant's proffered non-retaliatory reason for its action was pretext for retaliation. Id.

The "legitimate non-retaliatory reason" proffered by the defendant here is that the plaintiff was fired for failing to record patients' vital signs in their records at the time she tested them on July 2, 2013. (Doc. No. 28, at 23–24.) The facts supporting the defendant's non-retaliatory reason, viewed in the light most favorable to the plaintiff, are as follows.[9] In the course of her job as a nurse in the short procedure unit, the plaintiff cared for post-surgical patients waking from anesthesia. (Doc. No 29 ¶ 98.) At around 1:45 p.m. on July 2, 2013, the plaintiff started to feel weak and did not feel she could continue working without eating first. (Id. ¶ 99.) Her coworker, Julia O'Donnell, relieved her for lunch, and Ms. Emmell gave Ms. O'Donnell an admittedly disorganized and lengthy report on her patients. (Id. ¶ 101.) When Ms. O'Donnell reviewed the chart of "a

---

[9] The fact section of my summary judgment decision provides additional detail; this summary is a condensed version of that section. (See Doc. No. 41, at 11–13.)

14

general surgical outpatient," she found that the plaintiff had not documented "vital signs or admissions notes." (Id. ¶ 103.) For a post-cardiac catheterization patient, Ms. Emmell had told Ms. O'Donnell that the patient (admitted 45 minutes earlier) was awaiting his lunch and had "stable" vital signs—but Ms. O'Donnell could not find any documented vital signs and could not find entries on the "monitor that takes, records, and maintains patient vital signs." (Id. ¶¶ 104, 105.) Additionally, Ms. O'Donnell found that the plaintiff "had not recorded notes of her interactions with" the same post-cardiac catheterization patient in his chart upon his admission. (Id. ¶ 106.)

After returning from lunch, Ms. Emmell recorded several notes on the two patients as if she had done so at the time she checked on them. (Id. ¶ 107.) The plaintiff states that it was her practice, when she had multiple patients, to take contemporaneous notes of patients' vitals on a piece of paper, then record them later. (Doc. No. 33 ¶ 107.) However, Ms. O'Donnell was concerned when the post-cardiac catheterization patient's vitals were not recorded by the end of the day, and when she returned to work at 6 a.m. the next morning, she asked Ms. Bucci [a supervisor] to assist her in reviewing the patient's chart. (Doc. No. 29 ¶¶ 108, 109.) Ms. O'Donnell and Ms. Bucci found that the vital signs for the time Ms. Emmell cared for the patient remained missing. (Id. ¶ 110.) Sometime after that, Ms. Emmell documented the missing vital signs, again recording them as if she had done so in real time the previous day. (Doc. No. 29 ¶ 111.)

Ten days later, on July 12, 2013, the plaintiffs' employment was terminated. (Doc. No. 29 ¶ 113.) Given these facts, I find that the defendant has met its light burden of establishing a legitimate non-retaliatory reason for its adverse employment action.

15

The defendant qualifies Ms. Emmell's actions as "falsifying patient records" over and over again in its briefings. (See, e.g., Doc. No. 28, at 23.) However, neither party points to evidence showing that the vital signs Ms. Emmell recorded were falsified. And neither party points to a hospital policy requiring contemporaneous recording of vital signs.

As stated above, to warrant summary judgment, an employer must show that a reasonable jury could not find that "retaliatory animus" impacted its relevant decision and that "retaliatory animus" had a determinative effect on the outcome. Krouse, 126 F.3d at 501. An employer can establish this by showing that there is no genuine issue of material fact as to whether its non-retaliatory reason as pretext for retaliation. Id. This is what the hospital attempts to demonstrate in this case.

I disagree with the defendant and find that there is a genuine issue of material fact as to whether the defendant's non-retaliatory reason is pretext for retaliation. The reasons for this are discussed in my analysis of causation in my summary judgment decision and include that: the plaintiff met with Ms. Strzelecki and discussed her illness and performances issues less than a month before her termination, and the plaintiff had ongoing problems at work, which she discussed with her supervisors as stemming from her Lyme disease. (Doc. No. 41, at 31–32.) Additionally, prior to Ms. Emmell's transfer to the short procedure unit in 2007, her Lyme disease diagnosis in 2012, and her firing in 2013, she had a long career working for the hospital, having started there in 1988. Further, neither party has shown a policy stating that Ms. Emmell's actions constitute a fireable offense, and she was not fired until ten days later. While common sense tells me

that Ms. Emmell's actions on July 2, 2013 are likely not best practices of nursing, it would overstep the role of the court for me to decide that it was a fireable offense sufficient to overcome summary judgment in this context.

Given all of this, I find that there is a genuine issue of material fact as to whether the defendant's proffered non-discriminatory reason is pretextual. While this analysis of pretext was necessary for the sake of completion of my ADA/PHRA retaliation analysis, it does not change my conclusion denying summary judgment as to the plaintiff's retaliation claim.

An appropriate order follows.